# Southern Railway Co. *v.* Crowder.

*Action against Railroad Company by Passenger to recover Damages for Personal Injuries.*

1. *Common carrier; duty to passenger.*—A carrier of passengers is bound to exercise the highest degree of care to avoid injury to those whom he undertakes to carry as passengers, and for injuries resulting from a failure of duty in this regard, the carrier is liable; and this rule applies without regard to the vehicle used for conveyance.

2. *Same; same; passenger on freight train.*—A railroad company that carries passengers on one of its freight trains, is required to exercise the highest possible degree of care and diligence to which such trains are susceptible.

3. *Same; same.*—Persons taking passage on a mixed train, employed for the carriage of both passengers and freight, do not assume any risk of conduct on the part of the carrier, which is wanting in proper care for passengers; nor does the fact that such train is composed mainly of freight cars lessen the degree of care resting upon the common carrier, which requires it to do all things necessary to conserve the passengers' safety, consistent with the practical operation of such train.

4. *Action by passenger against railroad company; permissible for plaintiff to explain absence of physician.*—In an action against a railroad company by a passenger to recover damages for per-

[Southern Railway Co. v. Crowder.]

sonal injuries, it is competent for the plaintiff, after she had been made to testify on cross-examination that the physicians who treated her were not attending the trial, to explain the absence of these physicians, and to state that she had tried to get one of the physicians to attend the trial.

5. *Admissibility of evidence.*—In an action against a railroad company by a passenger to recover damages for personal injuries sustained while seated in one of the cars of the defendant, testimony describing the car's construction and furnishing is admissible in evidence as a part of the *res gestae*, tending to illustrate the manner of plaintiff's fall and injury.

6. *Same; witness; competent to show that expenses were paid.*—In an action against a railroad company by a passenger to recover damages for personal injuries alleged to have been caused by the negligence of defendant's employees, it is permissible for the plaintiff to show, upon cross-examination of one of the defendant's witnesses, that the defendant paid his way to the place of the trial and was to pay his expenses.

7. *Action against railroad company for personal injuries to a passenger; when damages not excessive.*—In an action against a railroad company by a passenger to recover damages for personal injuries, where it is shown that by reason of the acts complained of the plaintiff sustained serious hurts, that the bone in her hip joint was fractured, which would result in permanent injury to plaintiff and in the impairment of her general health, and materially affect the use of her leg, causing it to stiffen and shorten, the assessment of fifteen thousand dollars damages by the jury can not be said to be excessive.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This action was brought by Mary B. Crowder, the appellee, against the Southern Railway Company. The complainant claims $30,000 damages for personal injuries sustained by her while a passenger on a train operated by the defendant company, which injuries were alleged to have been caused by reason of the negligence of the defendant. and its employees. The defendant pleaded the general issue and contributory negligence on the part of the plaintiff. Upon these please the trial was had.

Upon the trial the following facts were disclosed: The plaintiff, a married woman, 58 years of age, was riding

in the caboose of defendant's freight train on her way from Decatur, Ala., to Huntsville, Ala., and as the train was slowing up for a stop at Madison station, about ten miles from Huntsville, she fell or was thrown from the chair in which she was sitting, to the floor, and received injuries to her hip, causing a fracture or dislocation of the hip joint. The train was in the habit of carrying passengers in the caboose, which was an ordinary freight caboose, primarily fitted up for the conductor's and crews' use and occupancy, and was divided into three compartments, the middle compartment being provided with rude benches against the wall, and a chair or two. The plaintiff was seated in one of these chairs in the rear of the rear compartment; when, as she claims, she was thrown to the floor by a violent jar of the train. It was admitted that she fell from the chair to the floor as the train was stopping for Madison station, and received an injury to her hip, but it was disputed that there was any jarring or jolting of the train of any unusual force other than is ordinarily incident to the stopping of freight trains. This train was composed of thirty cars, engine, tender and caboose, the caboose being the hindmost car in the train.

The principal question at issue was as to the character and extent of the jar, jerk or jolt, or checking up of the train as it approached the station, which jar or checking was alleged to have caused the plaintiff to fall.

The plaintiff contended, and her evidence tended to show, that there was evidence of negligence on the part of the defendant or its conductor, and further that the conductor was negligent in not furnishing the plaintiff a better seat or better accommodations than were furnished.

The evidence for the defendant tended to show that there was no negligence in this respect, and it was further contended by the defendant that as for such a train upon which the plaintiff was a passenger the law did not require it to furnish its passengers any better, safer or different accommodations than were usually or ordinarily found on other cabooses under similar circum-

stances and under like conditions. The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

Upon the cross-examination of a witness, who was introduced by the defendant, the plaintiff's counsel asked him the following question: "Did the defendant pay your way down here?" The defendant objected to this question upon the ground that it called for immaterial evidence, the court overruled the objection, and the defendant duly excepted. The witness answered that the defendant gave him a pass, and that he believed the defendant was to pay his expenses.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury, among others, the following written charges, and separately excepted to the court's refusal to give each of them as asked: (11.) "The jury have the right to test all the evidence in the light of common sense and common experience, and if in the light of their common sense and common experience, the evidence does not reasonably satisfy their minds that the jar or jolt which caused the plaintiff to fall from her chair was greater than is ordinarily incident to the prudent management of a freight train, they can not find a verdict against the defendant so far as negligence in that particular is charged." (12.) "Under the evidence in this case there can be no verdict against the defendant based on any charge of wrong or negligence of the conductor." (13.) "Under the evidence in this case, I charge you, gentlemen of the jury, as a matter of law, that the conductor was guilty of no wrong or negligence of which this plaintiff can complain." (14.) "It is a fact of common knowledge that even on a passenger train, with every appliance for comfort and safety that can be devised, there is more or less of a jar and jerk incident to the starting and stopping of trains, and that such jars and jerks are, as a rule, greater on freight trains. A passenger on such trains assumes the ordinary risk and discomfort incident thereto, and if the train is managed with such care and prudence by skillful and prudent employees as to subject him only to the risk and discomfort thus inci-

dent, the railroad company would not be responsible for any accident resulting therefrom." (15.) "I charge you, gentlemen of the jury, as a matter of law, that the company was under no legal obligation to furnish or provide any better or safer accommodations for its passengers than the evidence in this case shows were furnished." (16.) "I charge you, gentlemen of the jury, as a matter of law, that you can not find a verdict for the plaintiff based on any omission of defendant to provide or furnish a better or different kind of seat or chair, or a better or different place or compartment to sit in." (17.) "I charge you, gentlemen of the jury, that under the circumstances of this case the plaintiff was bound to accept the accommodations furnished her, just as she found them, as provided for her, there being nothing in the case to show that she was exposed to any obvious and unnecessary danger by reason of such accommodations." (18.) "Gentlemen of the jury, I charge you that the only issues of fact before you, apart from the question of damages, are (1) whether or not the jolt or jar imparted to the caboose and which caused the plaintiff to fall, was unusual or extraordinary, as compared with the ordinary jolts or jars incident to the operation of freight trains, (2) whether or not the plaintiff herself was guilty of any negligence proximately contributing to her injury. And if you believe from the evidence that the jar or jolt which caused the plaintiff to fall from her chair was not unusual or extraordinary as herein defined, your verdict should be for the defendant."

There were verdict and judgment for the plaintiff, assessing her damages at $15,000. The defendant made a motion for a new trial. The grounds of this motion were that the verdict was contrary to the evidence and contrary to the law, and that the verdict was excessive. This motion was overruled, and the defendant duly excepted. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

SMITH & WEATHERLY, for appellant.—The court erred in refusing defendant's charge numbered eleven. This charge is based on the theory that a passenger on a freight train assumes all those ordinary risks and discomforts which are inherent in the operation and management of freight trains, even when prudently operated and managed, and upon this assmption charges the jury that they have the right to test the evidence bearing upon the degree of violence of the jolt or jar complained of, in the light of their common sense and experience, and so testing the evidence, if it fails to reasonably satisfy their minds that the jar or jolt complained of was greater than is ordinarily incident to the prudent management of a freight train, they can not find a verdict against the defendant so far as negligence in that respect was charged in the complaint. *Chicago & Alton R. R. Co. v. Arnold,* 19 L. R. A. 313; *Ohio Valley R. Co. v. Watson's Admr.,* 19 L. R. A. 310 and notes, and page 312; 4 Elliott on Railroads, § 1582 and cases cited in note 3, p. 2465, and cases cited in note 1, on p. 2466, 4 Elliott on Railroads, § 1629, and cases cited in note 3, on p. 2552; Hutchinson on Carriers, § 538a, concluding paragraph.

The railroad company is not necessarily negligent because in starting or in taking up or letting out slack, there is more or less jerk or sudden motion of the cars. 4 Elliott, § 1629, pp. 2532-3, and note 1 on p. 2553.

And these necessary risks and discomforts are a matter of common knowledge.—Hutchinson on Carriers, § 538a, p. 616; *L. & N. R. R. Co. v. Bisch,* 3 Am. Neg. Cases, 257, 261.

And the rule is not different, although the train has a caboose attached for the transportation of passengers. *L. & N. R. R. Co. v. Bisch,* 3 Am. Neg. Cases, p. 257, 260; 120 Ind. 549.

Certainly it was not misleading to charge a jury in a civil case they have the right to test the evidence in the light of common sense and common experience.—2 Thompson on Trials, § 2483; *Jenny Elec. Co. v. Branham,* 145 Ind. 314; *Sanford v. Gates,* 38 Kan. 405; *Rajnowski v. R. R. Co.,* 74 Mich. 15.

The court erred in refusing defendant's motion for a new trial. The damages were excessive.—*A. G. S. R. R. Co. v. Burgess,* 119 Ala. 555; *Johnston v. St. Paul, etc., R. Co.,* 36 L. R. A. 588; *Standard Oil Co. v. Tierney,* 14 L. R. A. 680 and notes; *Furnish v. Mo. Pac. R. R. Co.,* 41 Fed. Rep. 311; *Lapeline v. R. R. Co.,* 40 La. Ann. 661; *Fla. Ry. & Nav. Co. v. Webster,* 25 Fla. 394.

N. L. MILLER and LANE & WHITE, *contra.*—There was no error in the court's rulings upon the evidence.—*Dryer v. Lewis,* 57 Ala. 551; *Winslow v. State,* 92 Ala. 78; *Flinn v. Barber,* 59 Ala. 446.

The charges requested by the defendant asserted incorrect propositions of law and were properly refused. *Railroad Co. v. Ashley,* 14 C. C. A. 373; *Railroad Co. v. Horst,* 93 U. S. 291.

The damages assessed by the jury were not excessive. *S. & N. R. R. Co. v. McLendon,* 63 Ala. 266; *Aldrich v. Palmer,* 24 Cal. 513; *A. G. S. R. R. Co. v. Bailey,* 112 Ala. 167; 8 Am. & Eng. Ency. Law, 627-631.

SHARPE, J.—Damages are claimed for injuries received by the plaintiff while she was travelling from Decatur to Huntsville as a passenger on a train used by defendant for carrying passengers and freight. The car used for passengers was a caboose attached to the rear end of the train. The conductor provided for plaintiff in the rear of the caboose a chair, which in testifying she described as being narrower than an ordinary chair, without arms and having a low back and a hard wooden bottom. Plaintiff's evidence tends to prove that while the train was being moved about a way station she was thrown from her seat and hurt by a violent jerk of the train.

The jury having been instructed affirmatively in favor of the defendant as to count 4 of the complaint it is presumed that no recovery was had thereon and, therefore, rulings on pleadings pertaining to that count are immaterial.

The law from public policy holds carriers of passengers to the highest degree of care to avoid injury to those

it undertakes to carry as passengers, and for injuries resulting from a failure in that regard the carrier is liable. This rule is general and applies without regard to the vehicle used for conveyance though it does not hold the carrier as insuring the same degree of safety or convenience on all occasions or on all kinds of vehicles.

It is common knowledge that trains used exclusively for the carriage of freight have not appliances and furnishings so well adapted to graduating their movements as do passenger trains, and that jolts and jars may be allowed to occur thereon which would be harmless to freight and yet be dangerous to passengers if passengers were being carried. It may also be a fact that such jolts are ordinarly incident to and are not inconsistent with prudent management of a train used exclusively for freight. Therefore, it cannot be assumed as a matter of law, that what would be prudent management of a freight train is a test of what would amount to prudence in the operation of mixed trains, employed for the carriage of both passengers and freight. Those taking passage on such trains assume no risk of conduct on the carrier's part lacking in care for passengers, nor does the fact that the train is composed mainly of freight cars lessen the degree of care resting on the carrier, and which requires of it everything which consistently with the character and practical operation of such trains, is available for the passenger's safety. Elliott Railroads, § 1629; *I. & St. L. R. Co. v. Hart*, 93 U. S. 291.

The fact that injury to a passenger has resulted from an act or omission of carrying by a railroad company raises a *prima facie* presumption of negligence on the part of the company and casts on it the burden of disproving the presumption.

From the evidence in this case it appears that plaintiff's fall may have been attributable to combined causes, viz., a jolt of the train and insufficiency of the chair to support her against such jolt. It may be that a seat constructed to withstand and sustain its occupant against such jolts would have rendered them harmless. Whether in this instance the defendant fulfilled its

duty in respect of the seat furnished or in respect of moving the train were questions of fact for the jury to determine in view of the fact that the train was not for freight exclusively but was used for and was actually carrying passengers whose safety defendant was bound to conserve by adopting if necessary methods different from those used for the carriage of freight. Like principles were declared in the case of *Mo. Pac. R. Co. v. Holcomb*, 44 Kan. 332, a case involving a similar accident on a mixed train.

In each of charges 11 and 14 refused to defendant it is wrongly assumed that the train in question was a freight train merely. Charge 14 is bad for further reason that it is argumentative in respect of the comparison it makes between passenger and freight trains and also because it is not common knowledge as is therein in effect asserted that there is always more or less of a jar or jerk incident to the starting and stopping of passenger trains. Neither of the other refused charges was in accordance with the principles above stated. Their defects will appear without special mention. There was no evidence from which contributory negligence could have been imputed to plaintiff.

Rulings on evidence so far as they are here complained of, involve no reversible error. After plaintiff had been caused by cross-examination to say the physicians who treated her were not attending the trial, it was permissible for her to explain the absence of those physicians, to rebut inferences that might have been drawn against her from the fact of such absence. The matter called for by the question "did you try to get him [Dr. Chapman] to come here" was not irrelevant, and the court will not be put in error for overruling the objection made, which being merely general, did not challenge the form of the question.

As part of the *res gestae* tending to illustrate the manner of plaintiff's fall and injury, the testimony describing the car's construction and furnishings was properly admitted.

Payment by a party of expenses accruing on the attendance of a witness affords the witness a pecuniary

benefit beyond what the law provides for his compensation. Though the fact of such payment may impute no improper motive to the party, yet it may afford some ground for inferring a bias in the witness' testimony and is, therefore, admissible in evidence.—*A. G. S. R. Co. v. Johnston,* 128 Ala. 283.

The only remaining question meriting special consideration is that raised by the motion for a new trial respecting the amount of damages assessed.    The elements of damages in such cases are not such as to furnish any definite rule by which the jury can be guided in fixing the amount to be recovered.    Here they included such suffering and physical impairment as had come or would probably ensue to the plaintiff as the proximate result of negligence averred and proven.

Evidence which was undisputed, tends to show that by her fall plaintiff sustained serious hurts, among which was a fracture of a bone in the hip joint in the treatment of which she was for several weeks kept prostrate with a weight suspended to her foot, and that this hip injury has resulted in impairment of plaintiff's general health and a permanent stiffening and shortening of her leg to an extent which will henceforth deprive her of its natural use.    The jury was authorized to award for recovery a sum which would furnish reasonable compensation for these injuries and the suffering naturally attendant thereon.    The law committed the ascertainment of that sum to the jury's discretion, and to the court the duty, in that regard, only of confining the exercise of that discretion to reasonably proper and practicable limits.    In the record we do not find warrant for declaring that the trial court erred in determining those limits were not exceeded.

The judgment will be affirmed.