**DRUMMOND v. STATE.   (6 Div. 411.)**

(Court of Appeals of Alabama.  Aug. 19, 1924. Rehearing Denied Oct. 7, 1924.)

**1. Witnesses ☞388(10)—Impeaching question asked as to prior statements held improper as failing to state time and place, etc.**

In prosecution for murder, question by defendant on cross-examination of state's witness as to whom witness told first, if anybody, *held* properly excluded, as not proper for impeachment for failure to state time and place, and give name of person to whom alleged statement was made.

**2. Witnesses ☞372(2)—Question on cross-examination held too general for purpose of showing bias or interest.**

In prosecution for murder question on cross-examination of state's witness as to whom witness told first, if anybody, *held* too general for purpose of showing bias or interest.

**3. Witnesses ☞372(1)—Questions to witness tending to show bias or interest of one not witness held properly excluded.**

In prosecution for murder, questions by accused to state's witness tending to show bias or interest of one not witness *held* properly excluded, where not tending to show bias or interest of witness.

**4. Witnesses ☞374(1)—Refusal to talk about case does not tend to show bias or interest.**

Refusal of witness to talk about case does not tend to show bias or interest.

**5. Witnesses ☞374(1)—Witness may not be impeached for bias or interest by proof that outsider talked to him about case.**

Witness may not be impeached for bias or interest by proof that outsider, neither witness nor party, talked to witness about case.

**6. Homicide ☞158(1)—Statement of accused about getting rid of deceased in one way or another held competent.**

In prosecution for murder, it was competent for state to show that accused stated

that, if he could not get rid of deceased in one way, he would in another.

**7. Homicide ⚫⇒158(1), 166(1)—Evidence of threats by accused against deceased admissible to show malice or motive.**

In prosecution for murder, evidence of threats by accused against deceased is admissible to show malice or motive.

**8. Witnesses ⚫⇒379(1)—Questions, for purpose of impeachment, by state on cross-examination as to previous statements about facts of case held competent.**

In prosecution for murder, it was competent for state, on cross-examination of accused's witness, to ask for purpose of impeachment, if witness had not made certain statements about facts of case to certain parties at fixed time and place.

**9. Criminal law ⚫⇒1170½(2)—Accused cannot complain of question to his witness as to conversations on case answered in negative.**

In prosecution for murder, accused cannot complain of question to his witness as to whether witness had been in frequent conversations on case for defendant, which question was answered in negative.

**10. Homicide ⚫⇒169(3)—Evidence of prior difficulties between accused and deceased admissible, but not evidence of details of such difficulties.**

In prosecution for murder, where accused had formerly been partner of deceased, evidence of prior difficulties between them was admissible, but evidence of details of difficulties connected with partnership and its dissolution was not admissible.

**11. Homicide ⚫⇒165—Whether accused had paid or contributed to education of deceased held immaterial.**

In prosecution for murder, whether accused had paid or contributed to education of deceased, his nephew, was immaterial, and objections to questions eliciting such information were properly sustained.

**12. Criminal law ⚫⇒789(8)—Requested charge requiring jury to be satisfied conclusively to moral certainty before convicting held to exact too high degree of proof.**

In prosecution for murder, requested charge that jury to convict must be satisfied of guilt clearly, fully, and conclusively, and to moral certainty, exacted too high degree of proof.

**13. Criminal law ⚫⇒815(9)—Requested charge held objectionable, as not predicated on evidence.**

Requested charge that before jury could convict they must be satisfied of guilt conclusively, and to moral certainty, *held* objectionable, as not predicated on the evidence.

**14. Criminal law ⚫⇒789(4)—Requested charge relating to reasonable doubt held argumentative and misleading.**

Requested charge that requirement of belief in guilt beyond reasonable doubt was not fiction of law, but is substantial shield against conviction until proof leading jury to believe

that accused could not reasonably be innocent under evidence, was argumentative and misleading, and properly refused.

**15. Criminal law ⚫⇒786(2)—Requested charge that jury had right to weigh accused's evidence as they weighed other testimony in case held misleading.**

Requested charge that there was no duty to consider accused's evidence in light of fact that he was accused, but that jury had right to weigh it as other testimony in case, was inaptly drawn and misleading.

**16. Criminal law ⚫⇒815(9)—Charge that good character might be sufficient to raise reasonable doubt held faulty in pretermitting consideration of all the evidence.**

Requested charge that good character of accused might be sufficient to raise reasonable doubt, and to authorize acquittal, was faulty in pretermitting consideration of all evidence.

**17. Criminal law ⚫⇒561(3)—Evidence of good character alone not sufficient to raise reasonable doubt and authorize acquittal.**

Evidence of good character alone is not sufficient to raise reasonable doubt and authorize acquittal.

Appeal from Circuit Court, Walker County; Ernest Lacy, Judge.

Freeman Drummond was convicted of manslaughter in the first degree, and he appeals. Affirmed.

Certiorari denied by Supreme Court in Ex parte Drummond, 212 Ala. 410, 102 So. 726.

These charges were refused to the defendant:

"(A) The court charges the jury that, before they can convict this defendant, they must be satisfied clearly, fully, and conclusively, and to a moral certainty, and unless they are so satisfied they must find the defendant not guilty."

"(1) The requirements that juries must believe defendant guilty from the evidence beyond a reasonable doubt is not a fiction of law, but is intended as a substantial shield against conviction until that degree of proof is made which leads the jury to believe that defendant cannot reasonably be innocent under the evidence."

"(3) The court charges the jury that there is no law in this state which makes it your duty to consider defendant's evidence in the light of the fact that he is defendant, but you have a right to weigh it as you have other testimony in the case."

"(9) The court charges the jury that good character of the defendant may be sufficient to raise a reasonable doubt of his guilt, and to authorize an acquittal."

Gray & Powell, of Jasper, for appellant.

It was the right of defendant to cross-examine the witness Garner in order to elicit testimony showing his interest or bias. Knox v. State, 18 Ala. App. 358, 92 So. 206; Knowl-

es v. Blue, 209 Ala. 27, 95 So. 481; Johnson v. State, 199 Ala. 255, 74 So. 366; Banks v. State (Ala. Sup.) 39 So. 921; 40 Cyc. 2489; Sorrell v. Scheuer, 209 Ala. 268, 96 So. 217. It was permissible to inquire of a witness if he had talked with others about the case. Boulden v. State, 102 Ala. 78, 15 So. 343; Russell v. State, 19 Ala. App. 425, 97 So. 845; Haisten v. State, 5 Ala. App. 56, 59 So. 361.

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

FOSTER, J. The appellant was indicted for murder in the first degree and convicted of manslaughter in the first degree, and his punishment fixed at seven years in the penitentiary. The evidence tended to show that Dr. Freeman Drummond, the appellant, and Dr. Sam Drummond, the deceased, had been for several years partners in the practice of dentistry, but that the partnership had in April, 1920, before the day of the killing in November, 1920, been dissolved, and that Dr. Freeman Drummond, the uncle of the deceased, and who had rented the offices, had notified the deceased to vacate. During the existence of the partnership the two dentists, the appellant and the deceased, had occupied the same offices, using the same tools or instruments necessary in their practice, the same furniture and office fixtures, having only one dental chair, one reception room and one work office. After the dissolution of the partnership the appellant and deceased continued to occupy the same offices, and had several quarrels about the offices and their business. The evidence for the state tended to show that on the morning of the killing the deceased was sweeping out the offices when the appellant came in and told the deceased he had to get out of the office, the deceased replying that he would get out when he got ready, and appellant told deceased he had better get out pretty quick. The deceased drew the broom with which he was sweeping, and told appellant he would knock his head off, and deceased then turned and went back into the operating room, set the broom down by the door facing, and picked up a chair and set it out of the way. Defendant went in the door of the operating room, and a pistol fired. The deceased was found lying on the floor with a pistol wound in his left breast, from which wound he died in a few minutes. The appellant admitted shooting the deceased. There was evidence of threats by the defendant against the deceased. The evidence for the appellant tended to show that the deceased was his nephew; that he had helped him to get his dental education and took him in partnership with him; that they practiced dentistry together for several years, and disputes arose between them about their business matters; that the partnership was dissolved in April, 1920; that appellant rented the offices occupied by them, and had repeatedly attempted after the dissolution of the partnership to get the deceased to vacate the offices; that on the morning of the fatal difficulty the defendant went to his office and found the deceased there sweeping out with a broom appellant went in, and deceased swept dust on appellant's feet and said he had received the notice to vacate, but he was not going to get out; that deceased drew the broom on him and said he would knock his head off, and picked up a chair and said he was going to kill appellant, and while deceased had the chair drawn in a position to strike appellant shot him. There was evidence of threats of the deceased against the defendant. There was evidence of good character of the defendant.

[1-5] The court did not err in sustaining objection by the state to the question propounded by the defendant on cross-examination of state's witness Garner, as follows: "Who did you tell, if anybody, the first one?" The question, if asked for the purpose of showing bias or interest, was too general. If for the purpose of impeachment, it was but fair to the witness to state the time and place and give the name of the person to whom the alleged statement was made. The questions propounded by the defendant to state's witness Garner, covered by assignments of error 1 to 12, inclusive, attempt to elicit testimony which might tend to show bias or interest of one Phillips, who was not a witness. Regardless of the interest of Phillips, the testimony sought in no way tends to show bias or interest of the witness. Neither would his refusal to talk about the case tend to show bias or interest. A witness may not be impeached, nor may bias or interest be shown by proof that an outsider, who is neither a witness nor a party to the cause, talked to the witness about the case, or that the witness refused to talk about the case. That some outsider had offered some inducement to the witness does not tend to discredit the witness. If such were the rule, a man of spotless character would be at the mercy of the unscrupulous, without power to defend himself from unjust aspersions. Cheatham v. State, 67 Miss. 335, 7 So. 204, 19 Am. St. Rep. 310.

[6, 7] It was competent to show by the state witness Hamilton that the defendant said in his presence (speaking of the deceased), "If I can't get rid of him in one way, I will another." Evidence of threats by the defendant against the deceased is admissible as tending to show malice or motive of the accused. Price v. State, 107 Ala. 161, 18 So. 130; Marler v. State, 67 Ala. 55, 42 Am. Rep. 95; Overstreet v. State, 46 Ala. 30.

[8, 9] It was competent for the state on cross-examination of defendant's witness J. W. Morris, to ask, for the purpose of impeachment, if the witness had not made cer-

tain statements about the facts of the case to certain parties at a fixed time and place. Holley v. State, 105 Ala. 100, 17 So. 102; Henson v. State, 120 Ala. 316, 25 So. 23. The question by the state's solicitor to the defendant's witness Morris, "You have been in frequent conversations on this case for defendant?" was answered in the negative, and the defendant cannot complain of injury. Crawford v. State, 3 Ala. App. 1, 57 So. 393; Green v. State, 151 Ala. 14, 44 So. 194, 125 Am. St. Rep. 17, 15 Ann. Cas. 81.

[10, 11] Evidence of the fact of prior difficulties between the defendant and the deceased was admissible, but evidence of the details of 'such difficulties is not admissible. The trial court did not err in refusing to allow the defendant to show the details of the difficulties connected with the partnership and its dissolution. It was immaterial to any issue in the case whether or not the defendant had paid, or contributed to, the education of the deceased. Objections to questions eliciting such information were properly sustained.

[12, 13] Charge A was faulty, as not predicated upon the evidence (Edwards Case, 205 Ala. 160, 87 So. 179), and as exacting too high a degree of proof.

[14] Charge 1 was argumentative and misleading, and was properly refused.

[15] Charge 3 was inaptly drawn, and misleading.

[16, 17] Charge 9 was faulty; it pretermits a consideration of all the evidence. Evidence of good character alone is not sufficient to raise a reasonable doubt of the guilt of the defendant and authorize an acquittal. Evidence of good character in connection with the other evidence in the case may generate a reasonable doubt of the guilt of the defendant. The very comprehensive and fair oral charge of the trial judge and the written charges given at the request of the defendant covered fairly and substantially every proposition of law arising in the case, and the record shows that the defendant was accorded a fair and impartial trial.

We find no prejudicial error, and the judgment of the circuit court is affirmed.

Affirmed.