(134 So. 133)

### KING v. STATE.
8 Div. 926.

Court of Appeals of Alabama.
April 21, 1931.

Joe Starnes, of Guntersville, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

SAMFORD, J.

On Sunday afternoon, August 12, 1928, defendant shot his brother-in-law, Charley Bunch, at the home of Raymond Amos, from the effects of which, and two days later, Bunch died. The defendant pleaded self-defense, and upon this plea the cause was submitted to the jury. The evidence was in conflict, and hence charges 1, 2, 3, and 4 were properly refused.

The appellant has seen fit to assign thirty-six errors, and of these he admits that 11, 28, 29, 32, 33, 34, and 35 are without merit.

Under assignments 1, 2, and 3, exception is taken to the refusal of the court to permit certain questions propounded to state's witness, Maud Bunch, wife of deceased, touching the character of deceased for peace and quiet. At the time these questions were asked, there had been no evidence offered tending to prove self-defense. In the absence of evidence tending to prove that the defendant acted in self-defense, the rulings of the court were free from error.

The court, over the objection.and exception of defendant, allowed the state to prove that about 12 o'clock on the day of the homicide defendant borrowed $1 from the witness then testifying. That this testimony is irrelevant to any issue is very apparent, and prior to the enactment of section 3258 of the Code of 1923, which has been enlarged and made more comprehensive by rule 45 of the Supreme Court, appellant's contention might have had merit, but, under the law as it is, we may not justify a reversal even for error, where the court is satisfied that no injury therefrom resulted to the defendant. We can see no injury in this ruling.

Over objections and exceptions seasonably made, the state was permitted to prove that defendant was drinking some on the day of the homicide; that witness had seen defendant drinking some that morning. There was no evidence that defendant was under the influence of whisky at or near the time of the fatal shooting, nor is there any evidence tending to prove that the shooting grew out of the mental condition influenced by whisky. The shooting is shown to have happened after 3 o'clock in the afternoon, and the fact that defendant had taken a drink or several drinks in the forenoon of that day is a fact too remote to be material as tending to show intoxication at the time of the shooting, which differentiates the case at bar from Weems v.

State (Ala. Sup.) 132 So. 711.[1] The evidence here admitted comes under the influence of Vintson v. State, 22 Ala. App. 338, 115 So. 695; Williams v. State, 20 Ala. App. 257, 101 So. 367; Aplin v. State, 19 Ala. App. 604, 99 So. 734. The only effect of this evidence was to prejudice the minds of the jury against the defendant.

■■ When Grace King, the wife of defendant, was being examined on cross-examination, she was asked the question, "Did you and Dick (defendant) spend the night at home the night before?" This question was objected to by defendant; objection was overruled and exception was reserved. The answer to this question elicited the information that the night before she had spent the night in Huntsville. What relevancy this has to any issue in the case we are unable to see. The court erred in refusing to sustain defendant's objection. Under section 2, Acts 1927, p. 636, a motion to exclude the answer was not necessary. Volume 11, Enc. of Ev. pp. 176, 177; Karr v. State, 106 Ala. 1, 17 So. 328.

■■ There were several questions propounded to the witness Grace King for the purpose of impeaching her testimony by proving statements made by her out of court different to her testimony then being given. Where this is done a proper predicate must be laid, stating the statement charged to have been made, time, place, and who were present. This is but fair to the witness, and is a rule always to be observed. McDaniel v. State, 166 Ala. 7, 52 So. 400; Drummond v. State, 20 Ala. App. 286, 102 So. 723; Lancaster v. State, 21 Ala. App. 140, 106 So. 609. Some of the predicates laid to the witness Grace King did not comply with this rule; others did. The predicate laid for the impeachment of the testimony of defendant, to wit, "I will ask you if you did not state to this little boy Snow, that if this man didn't quit taking on down there you would go down there and finish the long legged son of a bitch?" was also in violation of the above rule.

■■ Inculpatory statements made by a defendant after the commission of an act charged as a crime are only admissible in evidence after proper predicate has been laid showing that such statement, admissions, or confessions are voluntary. When shown to be voluntary, such confessions and admissions may be shown independently of any denial by defendant.

What has been said with reference to the laying of predicates for impeachment of witnesses and predicates for the introduction of admissions and confessions ought to be sufficient to guide the trial court on another trial, and we therefore refrain from a separate discussion of each exception. The ques-

tion as to whether Bunch, the deceased, owned a pistol and that defendant was cognizant of that fact was immaterial to the issues of this case. Under the evidence here the deceased made no demonstration as if to draw a pistol, and the defendant had no reason to apprehend an attack with a pistol by deceased.

■ It was relevant for the witness Maud Bunch to testify that she was in possession of the knife of deceased at the time of the killing, when she got it, how long she kept it, and when and how it was taken from her possession. The defendant had offered evidence tending to prove that, at the time he shot deceased, deceased was attacking him with a knife; the knife with which the attack was alleged to have been made was in evidence and identified as having belonged to deceased. It was proper for the state to prove, if it could, that the knife in evidence was in the possession of Maud Bunch at the time of the fight; that she kept it until it was taken from her by some one unknown to her. If the defendant was manufacturing evidence, that in itself was a circumstance to be weighed by the jury.

■ Boyd Snow, a 10 year old boy, was introduced as a witness by the state, and on his examination the court allowed the solicitor to ask him certain leading questions to which objection was made by defendant. This was in the discretion of the trial judge, and, in the absence of abuse of discretion, will not be reviewed.

■ This witness was allowed, over proper objection and exception, to testify some time after the difficulty he went over to Amos' house and saw defendant over there and heard him say that, if he (defendant) heard any more out of Charley Bunch, he would go down there and finish the long legged son of a bitch. This was relevant and admissible as being related to the hostile spirit under which defendant acted at the time he fired the fatal shot. Smith v. State, 88 Ala. 73, 7 So. 52. The admission of this testimony did not depend upon a predicate for impeachment, but a predicate to show its voluntary nature should have been laid.

■ Adverting again to the question of a correct predicate to be laid for the impeachment of the testimony of witnesses, by proving contradictory statements made out of court, we have to say: The rule is illustrated and plainly stated in Terry v. State, 16 Ala. App. 430, 78 So. 460. When the rule is complied with, the testimony is admissible for impeachment purposes only. When the rule is not complied with, the testimony is hearsay and inadmissible.

For the errors pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

[1] 222 Ala. 346.